Good morning. Good morning, Your Honor. May it please the court, my name is Stephen Morger and I represent the appellant in this matter. Yeah, if you can keep your voice up to make sure the judge back in here, that would be helpful. Okay, I'll try to do so. Thank you. I would like to reserve, if I could, approximately five minutes in rebuttal. The issue that we're here today on is whether or not the complaint, and the standards for that, especially when we have is here where there was no oral argument allowed for the initial complaint, there was never an amendment in the first instance, this was a one-and-done on the motion to dismiss, is whether or not, under any theory, based on the allegations, I guess if you're saying if that's the issue, then should we not waste any time whether you actually stated any claims and just concede that part and say, can you? I believe so. I believe so. I mean, I think that there were claims stated in the original complaint, but based on the issues that have come up and input of new counsel, myself, I believe that it would be the intent of appellants to file an amended complaint with the district court. All right, so I think you didn't, my question was, are you conceding that there wasn't, there weren't any claims stated, and so let's just go to whether you can state any claims. No, I do not, I do not concede that. Okay. I do not concede that. Okay. I believe there were claims stated. I believe that those claims could have been stated better. Okay. And that therefore, given the opportunity of a remand to the district court, it would be the intent of appellants to file an amended complaint. All right. Are there any complaints that you think you can do better on? Well, I think that the fundamental issue here is the issue of the ownership of the funds that were in escrow. Since the time of filing the matters in the district court, and since at least the time of filing my initial brief, or appellant's initial brief in this matter, we have a case that came down which mirrors the facts here about as close as you can mirror any facts as I see it in this case, which is the Tribeca case. I couldn't really see how it was so close because it was a, it was a one-party escrow, and then some third party sent money in, and then the escrow holder sent it back, and the court said that was okay. I mean, that doesn't say they had to send it back to this, this other individual, so I guess I didn't see how that helped you. Here, the escrow holders, the escrow officers said, you know, my clients say do other things with the money in this account, and so we're going to. Well, so how is Tribeca even help you here? I didn't understand. Well, Tribeca, the case of Tribeca following cases like Todd versus Vestermark and whoever places the money into escrow until escrow actually closes, retains ownership in that fund. So that's the rule you're extracting, but who put the money into escrow here? I thought it was the investors, CESMP. No. Who put, so there was a, so maybe I'm not understanding this. We all have diagrams as to all the people here. The investors and CESMP entered into a film financing agreement, and then who wired or who put the money into the escrow account? Third-party investors arranged by stereoscope, deposited the money. So the third-party investors, because who, so what, who was holding it, that it was, or who had legal ownership of that money? The investors. And so they put it in into an agreement with CESMP, correct? Correct. They deposited the money with Richard Garzilli, who was counsel for stereoscope. Well, Mr. Garzilli. That's irrelevant, right? Who was the individual? No, I think it's very relevant. The source of the funds was not either of my notes says, according to your complaint, CESMP deposited the $708,000 raised by stereoscope into an escrow account, and that was in your complaint, according to my notes. Did I get that wrong? I'm not sure. I haven't gone back to look at the complaint on that, but the facts as we've described in the... Well, isn't, are we looking at the complaint? We're looking at the complaint to the extent, did it state a cause of action, but we're also looking at the question, can we amend, and we have submitted evidence in, it was in conjunction with the motion to remand. CESMP, that the $708,000 was deposited by CESMP in the Liberty City escrow account. So are you now saying that CESMP was not the depositor? Yes, I am. Okay, so your, your complaint was erroneous, factually. That is correct. Okay. The facts and evidence with respect to the motion to remand, and it's discussed in the district court and here on appeal, show that it came from Richard Garzilli's trust account, who was counsel for stereoscope. The money went from his trust account directly into U.S. Bank. So it's third-party funds, just like in Tribeca, and we've had at least an arbitration award, a confirmation of the arbitration award, and the interpleader action that have all found the ownership of those funds were the third parties. And so the, you're saying that Garzilli, if I'm understanding you, so the, the six investors who had entered into the agreement with CESMP gave their money to Mr. Garzilli, an attorney. Correct. And the attorney, on behalf of the investors, put it into the LCM escrow account. Correct. And so did the investors, the investors didn't contact the escrow holder, correct? The investors individually did not. The communications were from Mr. Garzilli or stereoscope. So unlike Tribeca, the, the people who you say are the owners of the funds did not send a letter to UC Bank. Am I, am I understanding that? I believe that is incorrect, Your Honor. Six investors, did they send a letter to the bank? No, their agent did, stereoscope. What you had in Tribeca. Did they say that they were, did stereoscopes, let's see, they sent in a letter on May 30th. May 30th. And they said. Freeze the funds. Did they say they were acting as the agents of the six investors? In those words, I don't believe so, but they did say the funds belong to the investors. Please freeze them while the issues are being determined. We have a separate agreement, the preliminary agreement, which gave all rights with respect to the funds deposited into escrow solely in stereoscope to issue directions. And so as in Tribeca, you have a third party sending money. In Tribeca, there was no correspondence with it. And in fact, the court talks about the fact that it came from a third party and the wire information would show that. Here we have wire information showing that it came from Richard Garzilli. During the course of the escrow, you have communications in both Tribeca and in this case, where the escrow holder is informed that the funds belong to a third party and that those funds should not be released. We have, again, in Tribeca, the escrow accepted that and went back and looked at the source of the wire and gave the money back to the third party because it's fairly basic in escrow that until you have close of escrow, which did not happen in Tribeca and which did not happen here, the ownership of the funds deposited in escrow remain in the party who deposited them. And therefore, since the investors deposited the money into escrow and there was no close of escrow, those funds remained in the investor. And when U.S. Bank released those funds, and again, I think it's important, they didn't release the funds to a party to the escrow, they released them to TREG, a non-party to the escrow in the same vein that they're trying to argue stereoscope was a third party, but the ownership of the funds is and always was in the investors and the escrow had no authority to release them to someone else. Well, the parties to the escrow was, I guess, LCM and EB Capital and TREG was the managing member of LCM. So, their release to TREG was the same, I believe they argue, as releasing it to LCM since TREG was the managing member. That's what they'd argue, but that's not the way that we would allege it. But, the way that you alleged it, so you allege U.S. Bank became aware of stereoscope's contractual relationships at the very latest by the time the arbitrator issued the TRO and preliminary injunction. You also allege that stereoscope's contractual relationship with TREG began to deteriorate in May of 2012. If we accept both of those allegations as true, how have you adequately pled in the present complaint causation on your claim for intentional interference with contractual relations? If they first learned after the arbitration, I would agree with you. But, the facts show they knew as of May 30th. Does the complaint show that? The complaints for interference with contract to the extent that the complaint doesn't allege that they were aware of the contracts before then, then no. But, the complaint does set forth that the money belonged to the investors. And so, the discussion that we've been having with respect to Tribeca, I believe, was adequately described in the complaint. And, the court's ruling on the motion to dismiss on that issue was wrong. Now, we do have these California cases saying that the escrow holder doesn't have any duty except to its clients. It doesn't have to look at third parties. I don't know that Tribeca says the opposite because that was upholding what the escrow holder did. It didn't say they had a duty to do that. Well, Todd versus Vestermark, Love versus White go there. What it says is you don't have an obligation to third parties that don't have a direct interest in the funds. And, the way Tribeca distinguished those cases is holding that the funds belonged to the third party. Did they really say that? They say a direct interest in the funds because the language that I saw said only to your clients. Well, they talk about who owns the funds. And, until close of escrow, the ownership of the funds isn't transmuted. I think the analogy that is best suited here is if the two of us were involved in an escrow to purchase a piece of property. You were going to sell. I was going to buy. And, I arranged for a lender to transfer money into that escrow. Can you and I then decide we're not going to go forward with the escrow. Escrow holder just give us the money from the bank without getting the bank its note or its deed of trust. Clearly, the answer to that is no. I don't think the lender would just put money into an escrow account unless it had arrangements with the escrow holder. Unless it was a party to the escrow. In a perfect world. If we were involved in buying a house and my mother put in some money and then obviously on my behalf. And, the escrow holder only looked to you and me on that. That would be a different sort of case because obviously she was putting it on my behalf. The question is would the escrow holder have a duty to send the money back to my mother if she sent in a letter saying I want my money back. That's the question that we're facing here. Right. But, the question here is the money was put in by the investors. At least that's the allegation that we will make. And, I think the facts support that. So, what case is the escrow holder has a duty to send the money back to the source of the funds on their request. Actually, here it wasn't on their request. But, let's just assume it was on their request. Tribeca. Okay. So, Tribeca didn't say there was a duty, right? They just upheld what the escrow holder did. Well, but they did it because over the argument from the parties to the escrow or the party to the escrow that you only owe a duty to me. Therefore, I told you to keep this money. Right. And, in order to win you would have to say there's an affirmative duty on the part of the escrow holder to give the money back on request. And, I didn't see Tribeca going that far. Well, Tribeca says whoever deposited the money owns the money. And, as the owner of the money, I'm entitled to the money back. And, that's the facts that we have here because it's clear that the money did go in from the investors through Mr. Garzilli. And, all of the agreements gave the investor money or the control of the investor money only to Stereoscope. And, under no circumstances. Do you want to save a minute? I do. But, under no circumstances were those funds to be released without investor or Stereoscope approval. And, they were here. Morning, Your Honors. May it please the Court. Faisal Zuberi on behalf of the Defendant at Pali's U.S. Bank and the individual U.S. Bank employees. We respectfully request the Court to affirm the order dismissing the plaintiff's complaint and to find that the District Court did not abuse its discretion in denying leave to amend. Whereas, here the appellant's own judicial admissions and the exhibits attached to their complaint establish that there's no amendment that could potentially rectify their deficient claim. Go ahead. Let me just start with where opposing counsel left off. Sure. You have the six investors who wire money into the escrow account. And, then their agent, this is what he would plead, I guess, in the amended complaint, asks for the money back. And, U.S. Bank, instead of giving the money back or freezing the funds, which is what most escrow holders do as soon as there's any question, they always freeze the funds, smuggles the money out and gives it to some third-party trig. So, why doesn't that state a claim of negligence at the least? Or, maybe under Tribeca there's a suggestion that there's a requirement for an escrow holder to protect the funds that are owned by a third party. It seems like there's something fishy here. Sure. That's that. And, so, now whether they've alleged it in the original complaint, but if they can allege more, if they can show that there was something sort of fishy going on or that they weren't, you know, that they were on some sort of notice that, you know, it said, I guess, U.S. Bank found the transaction, quote, unquote, weird and knew that Stero Scope claimed an interest in the escrow account and had requested that U.S. Bank freeze the account, wouldn't the court be encouraging willful blindness if it were to find U.S. Bank did not owe some sort of duty to Stero Scope in these circumstances? I don't think so, Your Honor. California case law is well settled that the escrow agent's duties extend only to the escrow parties. And if we impose a duty on an escrow agent to anyone else, we're going to be imposing conflicting duties on the escrow parties. That's the case even where the plaintiff here has an alleged interest in the escrow funds, and that was the exact scenario that the California Supreme Court and Summit Financial Holdings, the seminal case on this issue, was dealing with. The plaintiff in that case was the assignee of the funds that were in escrow, and the escrow agent was sued by the plaintiff for dispersing those funds to the escrow parties or pursuant to their instructions. It doesn't matter who the funds were dispersed to. All that matters is that the escrow agent followed the instructions of the escrow parties, which is what happened here. And the Summit Supreme Court- It's a one and done, though. They weren't given any chance. It seems like the things that we're talking about, they might be able to allege some sort of duty for negligence or maybe fraudulent concealment. Your Honor, I don't think they can allege any duty because there's no case law which imposes a duty on an escrow agent to a non-party. They also can't allege that U.S. Bank- We have general California law, the via conjuct factors and the like, and California law is pretty consistent that everyone owes a duty to everyone else. Now, you've got these cases that say, in general, the escrow holder only owes a duty to its clients, but in a case which looks pretty extreme where there was knowledge that the funds were being sought and returned by the individuals who had wired them in, I don't see that there's any per se rule that a California court wouldn't find an escrow holder to be negligent or perhaps complicit in something that was, as Judge Callahan says, fishy. So the California Supreme Court in Summit went on ad nauseum about how it was improper for the trial court in that case to impose agency obligations and duties and import them into an escrow account relationship. And here, we're not dealing with a situation where there was knowledge of something fishy beforehand. Did they say weird at some point? I wrote that in quotes.  But if the plaintiffs did want to restrain this account, there's a process and procedure in place for them to do so, which protects the due process rights of everyone. They approached U.S. Bank to freeze these funds. U.S. Bank immediately told them on that same day, according to their own judicial admission, that U.S. Bank can't do it because they're not an escrow party. If they wanted to freeze the funds, they could have gone in for a TRO and a writ of attachment. If anyone walks into an escrow agent's office, whether it be a title insurance company, depository institution, bank, and says, I think there's something fishy going on with account X, if we impose a duty on the escrow agent to then freeze that account, the escrow agent is going to be subject to dual responsibilities and liabilities. On the one hand, you're going to impose a duty on an escrow agent to follow the instructions of a complete stranger. And on the other hand, the escrow agent, under current and existing case law, is required to, quote, strictly follow the instructions of the escrow parties, which is what U.S. Bank did here. U.S. Bank immediately informed them that it couldn't follow their instructions. So for them to say they're relying upon U.S. Bank to carry out some obligations with respect to funds that U.S. Bank didn't have a duty to carry on in the first place belies logic. So are you distinguishing Tribeca on the ground that the escrow instructions didn't inform the escrow holder about how to deal with those funds, those three-party funds? So Tribeca is distinguishable for several reasons. The primary reason is Tribeca didn't impose a duty on an escrow agent to a non-party. Rather, the Tribeca decision absolved an escrow agent from claims by an escrow party for dispersing funds, which in that case were not even yet subject to the escrow account in the first place. The Tribeca decision dealt with a very unique set of circumstances where you had a one-party escrow agreement, which is not what we have here, and a third-party depositor deposited money with First American, which would become subject to the escrow upon the fulfillment of a condition precedent, which was never fulfilled. It's not as appellants have framed it, that the escrow hadn't closed, therefore the depositor owned the funds. That's not the situation that Tribeca was faced with. Tribeca was faced with a situation where the funds had not even yet become subject to the escrow agreement. And in our case, not only does the Liberty City Movie escrow agreement say that the funds were subject to the escrow agreement and only Liberty City Movie had dominion over them on behalf of anyone from Liberty City Movie's side, stereoscope, or the investors are not in the picture, but the appellant's own agreements with their business partners, which are attached to their complaint and incorporated therein by reference, acknowledge the fact that only Liberty City Movie had dominion and control over those funds once deposited in escrow. It was fully the intent of all the parties involved that the funds once deposited would be governed by the escrow agreement. That's confirmed by their own agreement at S.E.R. 156, which is a copy of their own preliminary agreement among themselves and their actual business partners, the Reserve Entertainment Group and the escrow party affiliate Liberty City Movie. And specifically, S.E.R. 156, paragraph 7, the last sentence, is an agreement between them and a third party, which they rely upon ad nauseum in their complaint, despite the fact that U.S. Bank is not a party to that agreement, which agreement specifically acknowledges that these funds are being raised by stereoscope from various investors to be handled by cutting edge stereoscope motion pictures LLC, which is not a party to this dispute. Plaintiffs admitted in their complaint that the funds were deposited by cutting edge stereoscope motion pictures LLC, a non-party to this dispute, and that those funds then became subject to the escrow agreement. Not only do they admit that in this case, but their demand for arbitration against their actual business partners, which is attached to the complaint or attached to the record and cited by them extensively, alleges that their actual business partners were the but for proximate cause of any damages they're claiming. And it also alleges that the monies were invested not by CESMP, but by Liberty City Movie itself. It's clearly the intent that these funds are going to be governed by this escrow agreement. And I don't think they can allege any duty on U.S. Bank that conflicts with its duty to its actual escrow parties. In addition to not having any duty, there's just no reliance here. The appellant's relationship with their business partners was falling apart before they contacted U.S. Bank. As soon as they contacted U.S. Bank, they were told, look, we can't comply with your instructions. You're not an escrow party. And now they're claiming that, well, they were relying upon U.S. Bank to follow their instructions. That's just not the case. This case is also distinguishable from Tribeca because, you know, Tribeca involved, I think I've already mentioned, a unique one-party escrow agreement. There was a condition precedent to the funds becoming subject to the Tribeca escrow account. But there's another important part of Tribeca that the appellees have ignored, which is there was a claim in Tribeca by a non-party to the escrow agreement against the escrow agent. And the court denied that claim by the Sky Group. It's called the Sky Pacific Group was the claimant on that issue. And the court denied that claim, citing Summit as the basis for not imposing a duty on an escrow agent to a non-party. Not only does Tribeca not impose the duty that the appellees are asking for here, but it reaffirms the fact that the escrow agent only owes a duty to its escrow parties. I think it's impossible for the appellants to amend their complaint to allege that they were a party to the escrow agreement or owed any duties that conflict with the duties that an escrow agent owed. It's impossible for them to amend to allege any kind of reliance or causation, whereas here they've admitted that the relationship, their business partners was already falling apart. Where are we in the proceedings here? Where are we in the proceedings? Yeah. So. That's okay. They didn't get any chance to amend, which is fairly unusual. Sure, sure. Your Honor, do you mind if I take a sip of water? Because I took cold medicine this morning and my mouth is really dry. You want me to get it for you? I got it. Stop the clock. He has a cold, so he has sympathy for you. Thank you. Thank you, Your Honor. So where we are in the proceedings is that the appellants have recovered an arbitration award against their actual business partners. In this case. For the same losses. They file a complaint, and what is the procedural? We removed it to federal court. We filed a motion to dismiss. The motion to dismiss was granted without leave to amend, which is appropriate if it's obvious that they can't. If it would be futile. If it would be futile. And in this case. But they just get that in the mail, and they don't even get to make an offer of proof as to what they would, how they could change it. Your Honor, multiple judges have looked at their alleged claims against U.S. Bank, and all have said that they lack merit. This action was, we previously interpleaded the funds that are the subject of their complaint in the state court, and they threatened claims against U.S. Bank in that action, and the judge assigned to that case says, I don't see how there's any duty. I don't see how you can have any claim against U.S. Bank. They decided not to add U.S. Bank to that case. Later, after they recovered a judgment against their actual business partners, for all of the sums that they're now claiming against U.S. Bank, now they're coming after U.S. Bank for those same sums, claiming that U.S. Bank was somehow a participant in the fraud that was committed upon them by their escrow parties. Their complaint judicially admits that the fraud committed upon them was their business partners shared one set of escrow instructions with them, but provided U.S. Bank with an alternative set of escrow instructions. So how U.S. Bank could have participated in that fraud, which the arbitrator adjudicated was the fraud committed upon them, is beyond me. But it would belie logic to allow claims against an escrow agent who's earning a de minimis fee, and impose an obligation on the escrow agent to follow the instructions of anyone who walks in and complains that they have a dispute with one of the escrow parties. It's clearly what the appellants were trying to do by importing agency law principles into an escrow relationship situation, which the California Supreme Court in summit warned against doing because it creates a conflict for the escrow agent who in society plays an important role and fulfills an important business purpose that they would otherwise be not willing to undertake. So would your rules say that an escrow agent could never, that you could never state a claim against an escrow agent? You could state a claim against an escrow agent. What if they were in cahoots with the other people? If the escrow agent was itself committing fraud and embezzling funds by itself on its own, that's a different story. But that's not the situation that they've alleged here. What they're alleging is that they told the escrow agent they have a dispute with one of the escrow parties, and the escrow agent didn't freeze the funds, so now they can sue the escrow agent. I can't go around suing people for not complying with agreements of third parties. What if the escrow agent said to the bank, you know, I just really, things have come to my attention that I'm just not really sure who this money belongs to, and then would you say in that situation the escrow agent should just go ahead and release the funds to the only two people that are party to the agreement? And nothing could ever be alleged? So under California law, the California Supreme Court, including in the Summit Financial Holdings decision that we discussed, specifically says that the escrow agent does not have an obligation to police the affairs of the escrow parties. And I haven't seen any case, opponents haven't cited one, where that type of fraud is sufficient to impose a duty on an escrow agent. California case law is well settled. The Supreme Court has said we must, quote, strictly comply with the escrow party's instructions, which is what we did here. And to impose a duty that conflicts with that obligation would put escrow agents in a very precarious situation. Obviously, you wouldn't want it to be too broad, but you're not saying that strict liability, that any time the escrow agent is released to the parties of the escrow agreement, that there can never be any cause of action? As long as the escrow agent is complying with the escrow party instructions, I haven't seen any case that imposes liability or subjects an escrow agent to claims by someone who's not a party to the escrow agreement. And it would be especially unfair to do so in this situation where they weren't relying upon us to protect their interest in these third-party funds. If they wanted to freeze the funds, there's a remedy for that. They could go get a TRO, but they failed to do that. There's already a remedy in place. All right, you're getting down on your time, so you might want to wrap up. Sure, so in conclusion, they've judicially admitted that U.S. Bank was not the but-for proximate cause and the deterioration in their relationship with their business partners. Not only do they judicially admit that here, they've admitted that in their arbitration claims against their actual business partners in which they allege that their actual business partners were the but-for proximate cause of their losses. They have an award on those claims that rule in their favor that their business partners were the but-for cause and the proximate cause of their losses. That award's been commemorated in a judgment. There's no set of amendments that they can offer to now inconsistently state that U.S. Bank was the proximate or but-for cause of any losses in connection with their interference claims. And with respect to fraud, negligence, and fraudulent concealment, they can't amend their pleading to say they were an escrow party. They were owed no duty here. And not only were they not owed a duty, there's no causation of reliance. And with that, I'll submit. All right, thank you. Thank you, Your Honors. I'll try to be very quick. Addressing a number of the points, counsel alleges that there's California cases that are uniform, that the duty is only to the parties of the escrow. It simply isn't the case. Todd v. Vestermark, Love v. White, Tribeca all hold that it's the depositor of the money is owed. He attempts to use summit to distinguish into a broad claim that escrow never owes a duty to any third party. In summit, summit was not the owner of the funds. The funds belonged to the party and the escrow, and those parties got to decide who got paid their money. The debt was assigned to summit, but it never owned the funds at any point in time. It was not the depositor. It was not the owner of the funds. And the fact that the parties of the escrow decided not to pay that debt from escrow funds, that's an entirely different situation than Tribeca and here. Counsel says we could have, instead of just making the demand, asked or gone and gotten an injunction, which to me acknowledges that we have an interest in those funds if he's saying we should have gone to court in the first instance. It's an acknowledgment that we have it. All right. You need to wrap up. You're in overtime. I believe my client should have had the opportunity to amend their complaint, to deal with the district court's concerns, to deal with the issues raised in this appeal, and to do so without oral argument and without leave to amend, even in the first instance, with abusive discretion and should be overturned. So this matter should be remanded to the district court. Thank you. Thank you both for your helpful argument in this matter. This matter will stand.
judges: Callahan, Bea, Ikuta